This is an appeal from a judgment in favor of appellees, Paul and Diane Carlisle, declaring void a lease entered into by the appellant, Mark Cambron, and the appellees. We reverse *Page 866 
On July 17, 1978, Mark Cambron entered into a contract of sale with Diane Carlisle, to purchase a business named "Dee's Stop `N' Shop Delicatessen" in Birmingham. At the same time, Cambron entered into a lease agreement with Paul and Diane Carlisle to lease the premises where "Dee's" is located. The term of the lease was five years with an option to renew for an additional five years. The lease provided in part:
 THIS LEASE SHALL BECOME NULL AND VOID in the event the said building should be entirely destroyed or rendered entirely unfit or incapable of being used for the purpose for which the same is hereby let, by fire or other casualty beyond the control of the Lessee. . .
 If said premises are so injured by fire, rain, wind or earthquake as to render the same partially untenantable or partially unfit for the use or purpose for which the same are hereby let and are repairable within a reasonable time after written notice of said injury is given by the Lessee to the Lessor or his Agents, then, and in any of those events, the Lessor or Agents may repair the same within said time, and the rent during said time shall be reduced in the proportion that said premises in said untenantable or unfit condition bears to said premises in their condition before said injury, provided, however, that in the event Lessor or his agents fail to commence said repairs within thirty days after Lessee shall notify Lessor or his agents of such injury this lease may be terminated by the Lessee by written notice at any time after the expiration of said thirty days, and before repairs are commenced by Lessor or his agents
Cambron conducted business at the leased premises until February 10, 1980, when a fire occurred inside the building The extent of damage done to the building is in dispute, as are the actions of the parties after the fire. Cambron sent the rent for February and March to the Carlisles. On March 12, 1980, the Carlisles' attorney returned the rent to Cambron with a letter of termination of the lease. The Carlisles claimed the fire had made the building "entirely unfit and incapable of being used for any business without substantial repairs," and that the lease was therefore null and void. Cambron, filed suit seeking: (1) a declaratory judgment as to his rights under the lease; (2) a temporary restraining order restraining the Carlisles from leasing the premises to anyone else; and (3) damages
The trial court found that the fire rendered the building "entirely unfit for use for the purposes" for which it was leased and declared the lease null and void
Cambron contends that the trial court's construction of the lease was erroneous and that the decision is contrary to the great weight of the evidence
To make the lease null and void the building must have been "entirely destroyed or rendered entirely unfit or incapable of being used for the purpose for which the same [was] let. . . ." It is clear from the record that the building was not entirely destroyed. The evidence shows there was little if any structural damage to the building. There was evidence that some concrete blocks on one wall were replaced. One interior wall was burned and there was a small hole in the ceiling. However, all four walls remained standing and the roof remained intact The question presented is whether the trial judge's finding that the building was "entirely unfit" is supported by the evidence
Having not found an Alabama case speaking directly to this issue, we looked to decisions of other jurisdictions. The case of Barry v. Herring, 153 Md. 457, 138 A. 266 (1927), is very similar to the present case. In Barry, Herring leased the first floor in a three-story building to use as a place of business The lease contained the following provision: "If the property shall be destroyed or rendered untenantable by fire, the tenancy shall be thereby terminated, and all liability for rent hereunder shall cease upon payment proportionately to the days of fire or unavoidable accident." A fire damaged the building and the lessor sought to terminate the lease under the *Page 867 
above provision. The lease was for five years with an option to extend it for five additional years. At the time of the fire, there were five years remaining on the lease because Herring exercised his option to extend the lease. In holding that the lease was not terminated, the court stated:
 It is fairly well settled by the authorities that where a lease contains a provision like the one before us in this case, made primarily for the benefit of the lessee, and the leased building is destroyed or rendered untenantable, the tenancy is thereby terminated if to restore such building it becomes necessary to rebuild it, thereby depriving the tenant of its use. But where the building may be restored by ordinary repairs made thereon with no considerable interruption to the tenant's business while the same are being made, the tenancy is not terminated or the lease forfeited
 In determining whether the repairs are ordinary repairs, and the interruption temporary only, the value of the property, as well as the duration of the lease, may be taken into consideration
In Barry, the damage consisted of burned joists supporting the first floor of the building. The ceiling and side walls were burned and damaged by water. The furnace, heating pipes and electrical wiring were also damaged by fire and water. Hence, under similar circumstances as in the present case, the Maryland court held the lease was not terminated. Also in accord is 51C C.J.S. Landlord and Tenant § 99 (2)(b) (1968), wherein it is stated:
. . . Partial damage to, or destruction of, the building does not of itself terminate a lease which provides for its termination if the premises are destroyed, or damaged so as to be unfit for occupancy, and this is true, although the premises, or a part of them, are rendered temporarily untenantable for the purpose of the lease
The majority of the damage done to the building leased by Cambron was to the interior of the building. The ceiling was damaged by fire and water. The interior paneling was burned, as was the electrical wiring. The estimates as to the costs of repairs were approximately $30,000. The lease was not to expire for another eight years. Cambron had paid $125,000 for the business and was paying $1,200 per month as rent. In order to purchase the business Cambron had obtained a $100,000 loan from Birmingham Trust National Bank. Approximately $70,000 of the loan remained unpaid at the time of the trial. The repair time estimates ranged from thirty to ninety days with the majority of the testimony indicating that the repairs could be completed in thirty days
We conclude that the trial court either misconstrued the applicable law or that its finding is not supported by the evidence. Because the premises were not rendered "entirely unfit," it follows that the lease was not void
For the foregoing reasons the judgment is reversed and the cause remanded
REVERSED AND REMANDED
TORBERT, C.J., and FAULKNER, EMBRY and ADAMS, JJ., concur